# In the United States Court of Federal Claims

No. 09-272C
(Filed August 20, 2010)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * | * |
| | *   Military pay; review of |
| **[N G],** | *   administrative discharge board |
| | *   action; evidentiary burden |
| Plaintiff, | *   required under arbitrary or |
| | *   capricious standard; evidentiary |
| v. | *   rulings; command influence; |
| | *   waiver of argument; due process |
| **THE UNITED STATES,** | *   rights. |
| | * |
| Defendant. | * |
| | * |
| * * * * * * * * * * * * * * * * * * * * * | * |

<u>John B. Wells</u>, Slidell, LA, for plaintiff.

<u>Kenneth S. Kessler</u>, Washington, DC, with whom was <u>Assistant Attorney General Tony West</u>, for defendant. <u>LCDR Sally A. Hughes</u>, United States Navy, Office of the Judge Advocate General, Washington, DC, of counsel.

### MEMORANDUM OPINION AND ORDER 1/

**MILLER**, Judge.

    This review of a former servicemember's administrative discharge board hearing, which challenges his separation from active duty and seeks an award of back pay, is before the court after argument on cross-motions for judgment on the administrative record. The issue presented is whether the United States Navy's decision to separate with an "Other Than Honorable" discharge was proper in light of alleged procedural deficiencies in the board proceeding.

--------

    <u>1/</u> This opinion originally was filed under seal on August 10, 2010. By ¶ 2 the parties were requested to notify the court of any redactions. All redactions requested are denoted by brackets.

**FACTS**

The following facts are drawn from the administrative record.  Plaintiff [  ] enlisted in the United States Navy (the "Navy") on October 18, 2004.  After completing training, he was assigned to Patrol Squadron Eight ("VP-8") in Brunswick, Maine.

While stationed in Brunswick, plaintiff was contacted by a young woman from Lewiston, Maine, through the social networking website "MySpace."  Although this young woman ("Female #1") was fifteen years old, her MySpace page listed her age as seventeen.  On August 28, 2006, Female #1, who was spending the night with a fourteen-year-old girl ("Female #2"), telephoned plaintiff to arrange a meeting and, per her Auburn Police Department Witness Statement Form attached to the police report of the incident, asked plaintiff "to come pick us up to drive around."  AR at 58.  Plaintiff and one of his friends, Petty Officer [   ], picked up the two girls in Auburn, Maine, and proceeded to drive to Pettingil Park, a public park, where offending sexual conduct occurred.

The written statements from Females #1 and #2 recited that, once at the park, all four occupants remained in the car while the females performed oral sex on plaintiff and his friend.  At this point, according to the written statements, plaintiff was receiving oral sex from Female #1 in the front seat, while Petty Officer [   ] received oral sex from Female #2 in the back seat.  Next, Petty Officer [   ] and Female #1 exited the car, and she performed oral sex on Petty Officer [   ] while plaintiff received oral sex from Female #2 in the car.  Female #2 stated that plaintiff digitally penetrated her while she was performing oral sex, but "when plaintiff] and I started to do stuff the cops came so we both pulled up our pants."  AR at 56.

According to his official report of the incident, Patrol Officer [   ] entered the park looking for a possible suspect in a motor-vehicle burglary and  noticed a parked car with steamy windows.  As the officer approached the car, he observed two occupants in the back seat pulling up their pants and two people sitting on the curb adjacent to the car.  When Officer [  ] asked for identification, only plaintiff stated that he had an ID, and the officer proceeded to question each person separately.  Plaintiff stated to Officer [   ] that he did not know, nor had he asked, the age of Female #1.  Female #2 did not comment about her age, but, according to Officer [   ]'s report, she confirmed the nature and extent of sexual activity and stated that "she knew it wasn't right to engage in any sexual act with [plaintiff]."  AR at 37.  Officer [   ]'s report reflects that Petty Officer [   ] stated that "it was obvious to him that [the two females] were not eighteen," AR at 38, and that he related these thoughts to plaintiff.  Officer [   ] searched the area and found condoms in the car, a used condom near Petty Officer [   ] on the ground, and a used condom and KY Jelly in plaintiff's pocket.  The females stated that they had not had sex with either male.

2

Plaintiff was arrested and charged with the crime of sexual abuse of a minor. Because this incident concerned "deviant sexual behavior," processing for administrative separation was mandatory, per Military Personnel Manual 1910-142, Separation by Reason of Misconduct – Commission of a Serious Offense (Jan. 25, 2001) ("MILPERSMAN"). The board considering separation must find "by a preponderance of evidence (e.g., copy of police record . . . )" that (1) the "specific circumstances of [the] offense warrant separation; and [(2) the] offense would warrant a punitive discharge per [the Manual for Courts-Martial], appendix 12 for same or closely related offense." AR at 26.

An Administrative Discharge Board (the "board") was convened on October 17, 2006, in order to determine whether plaintiff should be separated from the Navy. 2/ The board was comprised of Senior Member LCDR [    ], Member [    ], and Member ATC [    ]. Plaintiff was charged with the commission of a serious military or civilian offense, pursuant to MILPERSMAN 1910-142. 3/ It was the board's responsibility to determine whether misconduct occurred; whether separation was necessary; and, if so, what the characterization of the service should be. "Other Than Honorable" discharge is authorized when a sailor is separated for "[c]onduct involving one or more acts of omissions that constitute a significant departure from the conduct expected of members of naval service." MILPERSMAN 1910-304, Description of Characterization of Service (Oct. 15, 2001).

Those offenses that warrant punitive discharge, such as sodomy and indecent acts or liberties with a child or an adult, are to be considered when delivering an Other Than Honorable discharge. See MILPERSMAN 1910-142, 1910-304. These offenses are also violations of Articles 125 and 134 of the Uniform Code of Military Justice ("UCMJ"). 10 U.S.C. § 925 (2006) (sodomy); 10 U.S.C. § 934 (2006) (indecent acts or liberties with a child or adult and indecent exposure). Specifically, the offense of indecent acts or liberties with a child requires:

---

2/ Congress has given the military Secretaries broad authority to discharge enlisted members administratively pursuant to military regulations issued by the respective Secretary. See 10 U.S.C. §§ 1169, 6011 (2006). However, in any case where an Other Than Honorable discharge is a possible result, a sailor is entitled to request a hearing before an administrative discharge board, consisting of no fewer than three senior individuals from the same armed service branch. MILPERSMAN 1910-304, Description of Characterization of Service (Oct. 15, 2001); MILPERSMAN 1910-502, Administrative Board Composition (Apr. 27, 2005).

3/ This offense was handled as a non-judicial proceeding under Article 15 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 815 (2006), in order to deal with the offense as an administrative matter.

  *b. Elements.*
   *(1) Physical contact.*
     (a)  That the accused committed a certain act upon or with the body of a certain person;
     (b) That the person was under 16 years of age and not the spouse of the accused;
     (c)  That the act of the accused was indecent;
     (d)  That the accused committed the act with intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim or both; <u>and</u>
     (e)  That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

UCMJ art. 134, 10 U.S.C. § 934 (emphasis added).

  In accordance with MILPERSMAN, the Government put forth its case, which consisted of thirteen exhibits.  Plaintiff objected for lack of relevance to Exhibit 9, the "NAS Brunswick, Maine Security Incident Report, dated 5 July 2006," AR at  6, documenting a prior incident in which plaintiff had allowed two women, ages eighteen and twenty-one, to stay overnight in his barracks room.  No allegations of sexual misconduct had been leveled, but the senior member admitted the evidence with the following restriction:

> I won't let it be used as a pattern because this is about a commission of a serious offense, but . . . . [i]t is kind of similar in the setup.  So as I don't think I will put a whole lot of weight into this.  I won't let it be used as a pattern.  I am going to allow it to stay because of some of the similarities to the actual police report.

AR at 12.

  Plaintiff's defense against the current charge was that he was operating under the reasonable belief that the girls were at least sixteen years old.  He thought that Female #1 was seventeen years old, as represented on her MySpace page.  When he met the girls, they appeared to be at least sixteen years old.  Maine statutes recognize the defense that the accused reasonably believes that the person is at least sixteen.  Plaintiff's counsel offered Female #1's MySpace page as evidence despite the recorder's (prosecutor's) argument that the page did not identify by name the female with whom plaintiff engaged in sexual activity.  Apparently, the page listed her age as seventeen, and a MySpace message apology after the incident from Female #1 to plaintiff contained the same photograph as appeared on her

MySpace page.  The apology stated, "you shouldn't of told me ya'll was 18 . . .  i told ya'll my real age. . i dun no what [Female #2] told you but I told you . . . . so yeah. . . ." (sic).  AR at 59.  The senior member admitted this evidence.

Plaintiff also made an unsworn statement professing his reasons for joining the Navy, his regret for his actions, and his belief that the girls were over the age of sixteen.

The board found, by a unanimous vote, that plaintiff had committed a serious offense, in violation of MILPERSMAN 1910-142, and, as a result, recommended an Other Than Honorable discharge.  After rendering this verdict, the senior member elaborated that plaintiff's mistake regarding the age of the two females was of no import because his conduct was "indecent."  AR at 21.  He further admonished plaintiff for exhibiting indecent behavior and for giving the Navy, particularly his squadron, a bad name.  Finally, the senior member stated that "[i]n the grand scheme of things [you are] only getting fired from a job right now. I wish I had the authority to throw you in jail."  Id. at 22.

The discharge board referred its recommendation to plaintiff's commanding officer. Plaintiff, by counsel, submitted a Letter of Deficiency in opposition, detailing errors that the board made during plaintiff's hearing.  On November 9, 2006, plaintiff's commanding officer recommended to the separation authority that plaintiff be discharged from Naval service under Other Than Honorable conditions.  The separation authority agreed with this recommendation and directed the command to discharge plaintiff with an Other Than Honorable discharge.  Plaintiff received that discharge on December 22, 2006. 4/  Plaintiff subsequently filed an action in the United States Court of Federal Claims challenging his discharge and seeking reinstatement, back pay, and expungement of the incident from his military record.

## DISCUSSION

I. Jurisdiction

Plaintiff's complaint and the subsequent cross-motions for judgment on the administrative record are grounded on the Military Pay Act, 37 U.S.C. § 204 (2006).  It is well established that the Military Pay Act is a money-mandating statute and that claims for back pay based on the Military Pay Act are within the jurisdiction of the Court of Federal

_____

4/  This was not a punitive discharge, as a punitive discharge is characterized as a discharge resulting from a judicial proceeding such as a court-martial.  See UCMJ arts. 16-19, 10 U.S.C. §§ 816-19 (2006).

Claims. Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006). Moreover, wrongful discharge is justiciable within the terms of the Tucker Act, 28 U.S.C. § 1491 (2006). See Holley v. United States, 124 F.3d 1462, 1465-66 (Fed. Cir. 1997). "[A]lthough the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995).

## II. Standard of review

### 1. Cross-motions for judgment on the administrative record

The parties filed cross-motions for judgment on the administrative record pursuant to RCFC 52.1, which provides a procedure for parties to seek an expedited trial on a "paper record, allowing fact-finding by the trial court." Bannum v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The parties are limited to plaintiff's Navy record and individual statements of fact submitted under RCFC 52.1. The court must make its findings of fact from this record as if it were conducting a trial. Bannum, 404 F.3d at 1357. The Court of Federal Claims may consider "'extra-record' evidence" only in extremely limited circumstances. Metz, 466 F.3d at 998.

### 2. Decisions involving fitness for military service

Plaintiff challenges the decisions rendered by an administrative discharge board. "When a branch of the armed forces has made a decision concerning who is or who is not fit to serve, that decision is generally entitled to great deference." Doe v. United States, 132 F.3d 1430, 1434 (Fed. Cir. 1997). The court reviews decisions rendered by a board for correction of military records so to "not disturb the decision of the [corrections board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Barnick v. United States, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005)). The parties agree that this standard of review applies to the separation action taken on recommendation of the discharge board. In these circumstances, the doctrine of harmless error is rendered inapplicable because the court cannot approximate the discretion afforded to the military in its decisions. See, e.g., Wagner v. United States, 365 F.3d 1358, 1365 (Fed. Cir. 2004) (holding harmless-error test inapplicable when effect of error is unquantifiable and requires speculation as to outcome).

Plaintiff must overcome the presumption of regularity that attaches to the actions of the correction board. See Richey v. United States, 322 F.3d 1317, 1326 (Fed. Cir. 2003) (noting "the presumption of regularity that attaches to all administrative decisions" of the

United States). At this point, defendant advances the proposition that plaintiff's burden on review is to show by "cogent and clearly convincing evidence" that the decision of a military correction board was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. 5/ Plaintiff responds that requiring this heightened showing is inapplicable to administrative discharge boards, as it is only appropriate for reviews of military records correction boards. Defendant demurs, noting, *inter alia*, the similarities of the two military disciplinary boards.

This heightened burden previously was confined to review of military disability determinations, but its application was extended over time — both inconsistently and without explanation — to review of correction board decisions. The cases that defendant relies upon in the case at bar can all be traced back to reviews of military disability determinations. Defendant's most persistent citation, Krzeminski v. United States, 13 Cl. Ct. 430, 436 (1987), relies upon, *inter alia*, Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986), and Armstrong v. United States, 205 Ct. Cl. 754, 761 (1974), to support the application of a clear and convincing evidentiary standard. Although Wronke extends this standard to the review of a military board decision concerning the falsification of records, Wronke relies on Dorl v. United States, 200 Ct. Cl. 626, 633 (1973), which, in turn, relies upon Wood v. United States, 176 Ct. Cl. 737, 743 (1966), and Stephens v. United States, 358 F.2d 951, 954 (Ct. Cl. 1966), two reviews of disability claims. Meanwhile, Armstrong, 205 Ct. Cl. at 761, imposes a clear and convincing evidentiary standard under the guidance of a triumvirate of disability cases: Unterberg v. United States, 412 F.2d 1341, 1345-46 (Ct. Cl. 1969); Ward v. United States, 178 Ct. Cl. 210, 216 (1967) (per curiam); and Furlong v. United States, 153 Ct. Cl. 557, 563 (1961). Stewart v. United States, 197 Ct. Cl. 472, 484 (1972) (per curiam), which defendant also cites, is itself a military disability review, which similarly relies on the same disability cases.

Plaintiff asserts that, "[b]y [defendant's] own authority, the clear and convincing evidence standard applies **only** when the matter has first been referred to a military [board for correction of records]." Pl.'s Br. filed June 20, 2010, at 1. None of defendant's cited jurisprudence contradicts this assertion. 6/ Given that the courts conscientiously defer to

---

5/ Defendant cites Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986); Stewart v. United States, 197 Ct. Cl. 472, 484 (1972); Wyatt v. United States, 23 Cl. Ct. 314, 319 (1991); and Krzeminski v. United States, 13 Cl. Ct. 430, 436 (1987), to support this proposition. See Def.'s Br. filed June 10, 2010, at 2-3.

6/ Krzeminski, 13 Cl. Ct. at 436, is not binding precedent. Stewart, 197 Ct. Cl. at 480, reviews a disability determination. Wronke, 787 F.2d at 1576, addresses a discharge determination, but this determination is rendered by a board for correction of military

determinations unique to the purview of the military, see Doe, 132 F.3d at 1434 (emphasizing that fitness determination is entitled to "great deference"), and that a decision of a discharge board is reviewable for procedural violations only, see Adkins, 68 F.3d at 1323 (limiting judicial review to procedure followed in rendering military decision committed to discretion of military), a heightened burden of proof should not apply to the review of the discharge board's decision.

   3.  Plaintiff's assignments of error

      Plaintiff's Letter of Deficiency, his administrative appeal, argued that the discharge board essentially made four errors 7/ that rendered the discharge action arbitrary, capricious, contrary to law, or unsupported by substantial evidence.  Before this court plaintiff also argues that these four incidents indicate the presence of command influence at his hearing and caused the discharge board to render a decision that should be found arbitrary, capricious, contrary to law, or unsupported by evidence.  Plaintiff additionally asserts that his rights under the U.S. Constitution to due process and privacy were violated by these proceedings.  Defendant disputes each of plaintiff's assignments of error and, more fundamentally, argues that plaintiff's failure to raise command influence during the administrative proceedings has waived this argument.

      Plaintiff thus has put forth five assignments of error, which the court has grouped into four arguments.  First, plaintiff argues that the discharge board neglected to consider his defense of a mistake of fact.  Second, plaintiff challenges that the board's admission of a defense exhibit concerning another infraction of rules involving female company was improper.  Third, plaintiff contends that the recorder's (prosecutor's) remarks concerning his decision to make an unsworn rather than a sworn statement improperly biased the board.  Finally, plaintiff argues that the comments made by the senior member after rendering the verdict were improper and unnecessary and demonstrated command influence.

      MILPERSMAN 1910-510 governs the presentation of evidence in these proceedings, providing, in pertinent part:

---

   6/  (Cont'd from page 7.)

records, not an administrative discharge board.  Finally, Wyatt, 23 Cl. Ct. at 319, does not apply a clear and convincing evidentiary standard.

   7/  Although plaintiff actually articulates five assignments of error, the court jointly addresses plaintiff's second and third—verbal attack of respondent and respondent's counsel, respectively—assignments of error.

a. The rules of evidence for court-martial and other judicial proceedings do not apply in an administrative board hearing.

b. Reasonable restrictions shall be observed, however, concerning authenticity, relevancy, and competency of evidence presented.

MILPERSMAN 1910-510, Presentation of Evidence (Dec. 12, 1997).

1) Plaintiff asserts that the board neglected to consider his defense based on mistake of fact. Plaintiff adduced that Female #1's MySpace page represented her as being seventeen years old and that both females looked older than sixteen—all of which substantiated that plaintiff was operating under a mistake of fact. Plaintiff argues that the recorder (prosecutor) urged the board to ignore this defense and that the senior member himself ignored it. Plaintiff offers media publicity as one possible explanation for the board's refusal to consider this defense, and this surmise is buttressed by the senior member's remarks post-verdict. Defendant responds that the board considered plaintiff's contentions, as shown by the admission of Female #1's MySpace page into evidence and the acknowledgment of the reasonable mistake-of-fact defense in the senior member's final remarks. This acknowledgment supports a finding that this defense was considered. If it was considered, the court must afford the board deference in its decision. Barnick, 591 F.3d at 1377. Plaintiff has not shown that the board neglected to consider the evidence introduced to support this defense. In fact, the police report reflects that plaintiff "didn't know how old [Female #2] was" and "he hadn't asked [Female #2] how old she was." AR at 37.

Even if plaintiff were able to show that the board failed to consider this defense, the court cannot speculate that the board would not have proceeded to consider the other cited violations of the UCMJ relating to adult consensual sexual acts as a serious offense under MILPERSMAN 1910-142 warranting an Other Than Honorable discharge. See, e.g., UCMJ art. 125, 10 U.S.C. § 925 (sodomy); UCMJ art. 134, 10 U.S.C. § 934 (indecent exposure and indecent acts). Plaintiff contends that these offenses do not constitute a "serious offense" per MILPERSMAN 1910-142, but plaintiff waived this argument by not arguing it during the administrative proceedings. See Murakami v. United States, 398 F.3d 1342, 1354 (Fed. Cir. 2005) (waiving constructive travel restriction argument upon finding no record evidence raising it). These offenses all warrant punitive discharge and confinement, see UCMJ art. 134, 10 U.S.C. § 934, thereby rendering them serious offenses under the second prong of MILPERSMAN 1910-14: "Members may be separated based on commission of a serious military or civilian offense when . . . [the] offense would warrant a punitive discharge per MCM, appendix 12 for same or closely related offense."

2) Plaintiff argues that evidence of the prior incident was admitted improperly.  In admitting this report, the senior member stated that the evidence would not be given much weight or considered as a pattern of conduct.  Defendant focuses on these limiting remarks to argue that the evidence did not prejudice plaintiff.  Plaintiff rejoins with Fed. R. Evid. 401, which defines relevance as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Plaintiff acknowledges, however, that the Federal Rules of Evidence do not apply; rather, only "[r]easonable restrictions shall be observed . . . concerning authenticity, relevancy, and competency of evidence presented." MILPERSMAN 1910-510.  Even if not binding, the federal evidentiary standard convinces plaintiff that the practical effect of the evidence was to taint the record with irrelevant facts, especially because the evidence of the prior incident concerned neither sexual activities nor minors.

Plaintiff is correct that this evidence is incapable of assisting the trier of fact to determine if plaintiff engaged in sexual conduct with someone he knew to be a minor.  Defendant insists that this error is immaterial because the board is permitted to view the entire military record of the service member in question. MILPERSMAN 1910-302, General Considerations on Characterization of Service (Aug. 22, 2002).  However, this information was not in plaintiff's military record.  See AR 86-128.  While the prior incident report was not relevant, the board merely is required to apply reasonable restrictions, which the senior member accomplished by limiting the use of this evidence.  "So [ ]I don't think I will put a whole lot of weight into this.  I won't let it be used as a pattern.  I am going to allow it to stay because of some of the similarities to the actual police report." AR at 12.

The court is at a loss to identify the purpose served by this evidence if not to show a pattern of behavior.  Yet, the record reflects that the board applied reasonable restrictions, and the court must give deference to these restrictions.  Doe, 132 F.3d at 1434.  The board's consideration of this evidence, in view of the other evidence of record, does not render the board's decision arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

3)  Plaintiff contends that the board improperly considered the recorder's comment in his closing statement that plaintiff failed to testify under oath.  The recorder (prosecutor) stated: "The only statement we don't have is the statement of AN [  ].  He decided to stand up here and submit an unsworn statement because he didn't want to be questioned by myself or any of the board members." AR at 18.  Both parties, as well as the board, agree that this statement was improper, and as such, it was withdrawn. Id. at 18-19.  However, the parties dispute whether this statement improperly tainted the discharge proceeding.  According to plaintiff, the recorder's statement was made intentionally and subsequently withdrawn in order to sway the board.  "This was an obvious attempt to 'get away' with making an

10

illegitimate point much like the actions of lawyers on television drama shows who withdraw improper questions after an objection, knowing that their improper question or comment had its desired effect on the jury." Pl.'s Br. filed June 20, 2010, at 12.  Defendant downplays this remark as not central to the board's determination because the recorder withdrew it.  See AR at 18.  Moreover, defendant argues that the recorder actually was rebutting plaintiff's statement, not trying to discredit the statement as unsworn.  The court finds this rationalization to be fatuous.  The issue is whether the minimal procedural safeguards applicable were violated by the inappropriate statement.

The recorder's (prosecutor's) comments show that the recorder was attacking the nature of the testimony and not its substance.  However, defendant's former point is well taken, as it is speculative to assume that this statement actually had any influence on the board's decision.  Given the entirety of the evidence, the court cannot find that the recorder's inappropriate statement rendered the board incapable of delivering a fair and impartial decision.  The senior member promptly labeled this statement improper, and the recorder withdrew it.  The record exhibits substantial evidence that the board was not persuaded by plaintiff's statement merely because it was tendered as unsworn.

4) Plaintiff takes the senior member to task for verbally abusing plaintiff and his counsel.  Plaintiff was chastised for asking a witness to speak on his behalf, reprimanded for disgracing the Navy and his squadron, and told that the senior member did not care about the age of the girl in question because what plaintiff did was indecent.  Plaintiff contends that the board should not have weighed the consequences of the act, but was limited to the offending act, i.e., sex with a minor.  Plaintiff views the challenged remarks of the senior member, in addition to being unnecessary, as reflecting the board's pre-existing bias.  Plaintiff urges that the speed with which the board's decision was rendered and the harsh nature of the senior member's comments establish that the board, or at least the senior member, had decided this case before hearing it, thereby undermining the legitimacy of the hearing or any chance for a fair and impartial decision.  Defendant characterizes the senior member's remarks as an honest and forthright explanation of the judgment.  The senior member, in defendant's view, was explaining why plaintiff and the Navy were not a good fit and, as such, the remarks were immaterial.

The transcript of the hearing reflects that the senior member was upbraiding plaintiff and his counsel.  Frankly, this part of the record reads like a rant.  Although gratuitous, these comments did not render the board's decision arbitrary, capricious, contrary to law, or unsupported by substantial evidence.  The board had made its decision prior to the senior member's explanation of why he was "extremely offended" that plaintiff acted irresponsibly.

Plaintiff contends that the senior member's statement that "[t]he fact is that it doesn't matter what age the person is[,]" AR at 21, is inconsistent with the board's decision. However, plaintiff was charged with the offense of Misconduct – Commission of a Serious Offense, which is not limited to indecent acts with a minor.  AR at 21.  An Other Than Honorable characterization is appropriate for "[c]onduct involving one or more acts of omissions that constitute a significant departure from the conduct expected of members of naval service."  MILPERSMAN 1910-304.  Thus, the age of Female #2 is not an essential element to finding that plaintiff could be discharged Other Than Honorably.  The board is authorized to recommend discharge for an array of conduct constituting a "serious offense," which includes sodomy under Article 125 of the UCMJ, 10 U.S.C. § 925, 8/ an offense that provides sufficient ground for an Other Than Honorable discharge.  As such, the senior

---

8/  Sodomy consists of:

a. *Text.*

   (a) Any person subject to this chapter who engages in unnatural carnal copulation with another person of the same or opposite sex or with an animal is guilty of sodomy.  Penetration, however slight, is sufficient to complete the offense.

       . . . .

b. *Elements.*

   (1) That the accused engaged in unnatural carnal copulation with a certain other person or with an animal.

       . . . .

   (3) That the act was done with a child who had attained the age of 12 but was under the age of 16.

       . . . .

c. *Explanation.*  It is unnatural carnal copulation for a person to take into that person's mouth or anus the sexual organ of another person or of an animal; or to place that person's sexual organ in the mouth or anus of another person or of an animal . . . .

UCMJ art. 125, 10 U.S.C. § 925.

12

member's comments do not render the action arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

4. <u>Command influence</u>

Although plaintiff insists that command influence rendered the board's decision arbitrary, capricious, and contrary to law, defendant contends that plaintiff waived this argument by not raising it at the administrative level. <u>See</u> <u>Murakami</u>, 398 F.3d at 1354. Plaintiff, admittedly, did not mention "command influence" in his Letter of Deficiency, but maintains that the cited errors were caused by, and played a factor in, the board's failure to render an unbiased decision.  According to  plaintiff, "[t]here is no bright line test that requires the use of magic words."  Pl.'s Br. filed June 20, 2010, at 2.  Plaintiff insists that the senior member's post-verdict remarks establish the presence of command influence.  They read in full:

> There are some things I want you to take away from this.  In the grand scheme of things this is like getting fired from a job and from what I see whether the civilian courts see it that way or not, it can get a lot worse for you. The Navy is 24-7.  Just because you go home and take off a uniform does not mean you are out of the Navy.  The age of the individuals, you know my question to AO1 whether it mattered whether she was 17 or not had nothing to do with whether I had a problem with it.  The fact is that it doesn't matter what age the person is.  What you did was indecent.  I think you know exactly what you were going out there for.  There was no question in your mind. Whether you really cared about their age or not, the fact that you got caught in a parking lot, and from what I read about what happened in that car, it downright sickens me. You know what, the news really didn't play in to this at all.  You want to know why, because I can guarantee you the three of us on this board by the time we got out of work, the news was already over.  Because we work so hard, and all it takes is one act like you did.  Whether your lawyer thinks it does or not, it affects VP-8.  Everything everybody in VP-8 does is seen and it comes right back to VP-8.  So I don't know why you (CR) were making a statement about how it doesn't affect VP-8, but it most certainly does.  I take a lot of pride in my squadron.  These guys take a lot of pride in their squadron.  If you think that we think that little of it, than that is as disgusting as what he did.  I am extremely offended by the fact that you think it doesn't  affect VP-8.  There are some 350 to 400 people that make that squadron as good as it can be.  And if you think an act like this doesn't really shame anybody else, then you have to rethink some things.  There are people

in that hangar that work so hard.  There are people in that hangar that we have to tell to go home because they work so hard.

And for you to go out and essentially just drag that name through the mud for your own personal gains in what we saw here is just wrong.  You're lucky you are only getting fired.  I hope you understand that.  You can sit there and cry and moan about how it's not fair and stuff like that.  In the grand scheme of things your only getting fired from a job right now.  I wish I had the authority to throw you in jail.  You know we are always worried about being a bastard to other countries we go to, how about being a bastard to the home town that you're living in.  Did you think of that at all through this whole thing.  I can tell you didn't, otherwise we wouldn't be here.  You owe a big thank you to AO1 [    ] for even stepping up for you.  He did that because he does that for all his guys.  And you owe him an apology for putting him in the place you did.  That's all I got.

AR at 21-22.

Command influence may be found to exist if a reasonable citizen, knowing all of the facts of a given case, would believe the military justice system to be unfair and, as such, lose confidence in the entire system.  United States v. Lawson, 33 M.J. 946, 950 (N.M.C.M.R. 1991).  The mere appearance of command influence is sufficient.  United States v. Stoneman, 57 M.J. 35, 42-43 (C.A.A.F. 2002).  Although generally applied to military judicial proceedings, such as a court-martial, this principle also is applied to administrative hearings, e.g., Werking v. United States, 4 Cl. Ct. 101, 105 (1983), and it must be raised during the administrative proceedings in order to be reviewed by this court, see Murakami, 398 F.3d at 1354.

The initial burden lies with the defendant in the military proceeding [in the instant matter, plaintiff] to show "facts which, if true, constitute unlawful command influence . . . [which has a] potential to cause unfairness in the proceeding.  United States v. Biagase, 50 M.J. 143, 150 (C.A.A.F. 1999).  If the defendant is able to make a showing of such facts, the burden shifts to the Government to demonstrate beyond a reasonable doubt that unlawful command influence was either absent from or otherwise did not taint the proceedings.  Stoneman, 57 M.J. at 41. 9/

---

9/  Upon initial allegations of unlawful command influence, the court presumes "that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith."  Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979) (en

MILPERSMAN governs the senior member's role in an administrative discharge board, granting the senior member the authority to "preside over proceedings of the board, and [ ] rule on all matters of procedure (to include granting on continuances) and evidence." MILPERSMAN 1910-506, Senior Member of the Board (June 7, 2005). However, "[r]ulings of senior member may be overruled by a majority of the board." Id.

Additionally, Article 37 of the UCMJ restricts the influence of higher authorities on the findings of any military proceeding, providing:

> (a)  No authority . . . may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof with respect to the findings or sentence adjudged by the court . . . . No person subject to this chapter may attempt to coerce or, by any authorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . . The foregoing provisions of the subsection shall not apply . . . to statements and instructions given in the open court by the military judge, president of a special court martial, or counsel.

10 U.S.C. § 837 (2006).  This does not prevent the board, or the senior member, from expressing his opinions on the case, as the senior member did in United States v. Ovando-Moran, 44 M.J. 753, 756-57 (N-M Ct. Com. App. 1996); rather, the provision erects a

---

9/  (Cont'd from page 14.)

banc), superseded in part by statute, 10 U.S.C. § 628 (2006), as recognized in Porter v. United States, 163 F.3d 1304, 1311 (Fed. Cir. 1998).  However, if a defendant in a military proceeding is able to show facts constituting the presence of command influence, the court should presume the existence of command influence.  Biagase, 50 M.J. at 150-51.  Thus, the Government may satisfy its burden to rebut this presumption

> (1) by disproving the predicate facts on which the allegation of unlawful command influence is based; (2) by persuading the military judge or the appellate court that the facts do not constitute unlawful command influence; (3) if at trial, by producing evidence proving that the unlawful command influence will not affect the proceedings; or (4), if on appeal, by persuading the appellate court that the unlawful command influence had no prejudicial impact on the court-martial.

Id. at 151.

safeguard against individual attempts to improperly sway the court or board.  In <u>Ovando-Moran</u> the senior member expressed that, "if the accused were a good person he would have been at home with his pregnant wife, not 'Tom-catting' around with another woman." <u>Id.</u> at 756 (citation omitted).  The court did not find this comment, and others similar to it, sufficient to support an assertion of command influence.  <u>See id.</u> at 757.

According to plaintiff, the fact that the senior member consistently acted as though plaintiff's fate already had been decided is sufficient to support a finding of command influence.  Plaintiff also compares the senior member's rank to that of the other two members and notes that the senior member was appointed by the commanding officer.  None of these factual assertions, however, signifies the presence of command influence.  Throughout the administrative proceeding, the senior member acted within his powers under MILPERSMAN 1910-506 and he did not attempt to coerce the findings of the court.  The senior member reprimanded plaintiff and his counsel, but Article 37 of the UCMJ merely prevents an authority from reprimanding the other members about the findings of the board.  During his extended post-verdict remarks, the senior member announced, "I wish I had the authority to throw you in jail[,]" but he stopped short of censuring, reprimanding, or admonishing the other members for not taking this action.  AR at 22.

Assuming, *arguendo*, that plaintiff has shown facts constituting command influence, plaintiff failed to adduce them while arguing his case to the military.  This is fatal to this position.  Plaintiff marshals these facts in support of his assignments of error argued in this judicial proceeding.  Because plaintiff could have assigned the conduct as error during the Navy's administrative review, this court is precluded from considering the issue.  <u>See United States v. L.A. Tucker Truck Lines, Inc.</u>, 344 U.S. 33, 37 (1952); <u>Murakami</u>, 398 F.3d at 1354. <u>10</u>/

5.  <u>Plaintiff's other claims</u>

Plaintiff asserts a violation of his due process rights under the Fourteenth Amendment to the U.S. Constitution and a violation of his right to privacy in his sexual acts.  First, plaintiff contends his due process rights were violated because he was unable to confront the police officer who made the incident report.  The constitutional rights plaintiff invokes do not apply to Article 15 non-judicial proceedings, however.  <u>See Middendorf v. Henry</u>, 425 U.S. 25, 48 (1976) (holding that Fifth and Sixth Amendments do not apply to summary

---

<u>10</u>/  Plaintiff has not only waived this argument, but also failed to put forth sufficient facts demonstrating the presence of command influence.  As such, the court need not discuss the burden, per <u>Biagase</u>, that would have shifted to defendant in the presence of such facts.

courts-martial); <u>Dumas v. United States</u>, 620 F.2d 247, 253 (Ct. Cl. 1980) (same as to Article 15 proceeding). Even though the Government has the burden of persuasion, it is not required to call witnesses for the sole purpose of allowing plaintiff to examine them. Plaintiff could have called these witnesses himself.

Second, plaintiff asserts a right to privacy to engage in oral sex under <u>Lawrence v. Texas</u>, 539 U.S. 558, 578 (2003), and <u>United States v. Marcum</u>, 60 M.J 198, 206-07 (C.A.A.F. 2004). Under <u>Marcum</u> acts of sodomy by a member of the military are constitutional if (1) the conduct was of a nature to bring it within the <u>Lawrence</u> liberty interest; (2) the conduct does not encompass any behavior or factors identified by the Supreme Court as outside the analysis of <u>Lawrence</u>; and (3) no additional factors are present relevant solely to the military environment that affect the nature and reach of the <u>Lawrence</u> liberty interest. 60 M.J. at 206-07. Arguing under the first two prongs of this test, plaintiff maintains that the conduct in question was consensual and that it does not fall outside the scope of <u>Lawrence</u> because plaintiff had a reasonable belief that Female #2 was not a minor. Defendant aptly counters that not only was Female #2 incapable of consenting, but the conduct was in public and involved minors, removing it from the scope of <u>Lawrence</u>.

Plaintiff's conduct does not fall under the <u>Lawrence</u> liberty interest. "[T]he first question we ask is whether Appellant's conduct was of a nature to bring it within the <u>Lawrence</u> liberty interest. Namely, did Appellant's conduct involve private, consensual sexual activity between adults?" <u>Marcum</u>, 60 M.J. at 207. Because Female #2 was a minor, she was not capable of consenting. Two other factors that the Supreme Court delineates as being outside the rubric of <u>Lawrence</u> are whether the conduct involved minors or was in public. <u>Id.</u> (citing <u>Lawrence</u>, 539 U.S. at 578). The conduct in the case at bar involved two minor females, and the acts were performed in a public park. Plaintiff contends that sexual acts performed in a car are not open and notorious. Indeed, the conduct in question was not only public because it was performed in a car parked in a public park, but also because two other people were present during a phase of the incident in the vehicle. It seems counterintuitive for plaintiff to assert a privacy interest when his acts actually were not private.

Plaintiff has not shown that the board's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Although certain statements on the record were hyperbolic and the admission of evidence of prior conduct was improper, the board's process properly observed "reasonable restrictions" when making evidentiary determinations and satisfies the standard of review. MILPERSMAN 1910-510.

17

## CONCLUSION

Accordingly, based on the foregoing,

1.  Defendant's motion for judgment on the administrative record is granted, and plaintiff's cross-motion is denied.  The Clerk of the Court shall enter judgment for defendant.

2.  By August 19, 2010, the parties shall notify the court if either requests that this opinion should be issued for publication.  If publication is requested, both parties shall identify in brackets any material subject to redaction before this opinion is published.

**IT IS SO ORDERED.**

No costs.

/s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge